Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| | | | |
|---|---|---|---|
| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
| **CASE NUMBER** | 03 C 7485 | **DATE** | 8/12/2004 |
| **CASE TITLE** | Patti McCarthy vs. Czarnowski Display | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing set for 09/07/04 is reset to 10/28/04 at 9:00 a.m. For the reasons sated in the attached memorandum opinion, the defendant's motion to dismiss plaintiff's complaint is granted in part and denied in part. The defendant is given leave to file a new motion to dismiss for lack of subject matter jurisdiction by 08/26/04. Plaintiff's response is to be filed by 09/09/04 and defendant's reply is to be filed by 09/16/04. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | AUG 13 2004 — date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. Counsel for the parties picked up copies of memorandum from Judge's staff. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | date mailed notice |
| MW6 | courtroom deputy's initials | mailing deputy initials |

U.S. DISTRICT COURT
2004 AUG 13 AM 8:11

Date/time received in central Clerk's Office

Document Number: 14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PATTI MC CARTHY AND THOMPSON MC CARTHY, INC. n/k/a PATMA, INC., Plaintiffs, | ) | |
| v. | ) | No. 03 C 7485 |
| CZARNOWSKI DISPLAY SERVICE, INC., a/k/a THE MILESTONE GROUP, Defendant. | ) | |

DOCKETED
AUG 13 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Czarnowski Display Service, Inc.'s ("Czarnowski") motions to dismiss for the reasons stated below, we grant the motion in part and deny the motion in part without prejudice.

## BACKGROUND

In September 2000, plaintiff Patti McCarthy ("McCarthy"), a Georgia resident, entered into an agreement with defendant Czarnowski, an Illinois corporation with its principal place of business in Illinois. In that agreement,



14

McCarthy and her business partner, who is not a party to this action, agreed to sell their Georgia based business, Thompson McCarthy, Inc. ("TMI"), to Milestone Group, Inc. ("Milestone"), believing at the time that Milestone was a wholly owned subsidiary of Czarnowski. McCarthy now contends that Milestone was never separately incorporated and therefore brings her complaint against Czarnowski directly. Under the Asset Purchase Agreement between the parties, Milestone agreed to pay $950,000 for TMI, with $525,000 due at closing and the remainder paid in quarterly payments over the following three years. Czarnowski, in its own name, formally guaranteed Milestone's obligations under this agreement.

McCarthy and Milestone entered into three additional contracts pertaining to the deferred $425,000 portion of the purchase price: a Secured Promissory Note, a Security Agreement, and a Pledge Agreement. Czarnowski again signed for Milestone's obligations on the promissory note. In the Pledge Agreement, McCarthy agreed to accept Czarnowski's capital stock in Milestone as security for the deferred balance, believing that Milestone was incorporated separately from Czarnowski. In support of her belief, McCarthy points to clauses both within the agreements themselves and in ancillary correspondence from Czarnowski referring to Milestone as an Illinois corporation.

At the same time that McCarthy negotiated the sale of her business, she also

entered into an employment agreement with Milestone. Milestone agreed to employ McCarthy until December 31, 2003, with a base salary of $125,000 for 2003 and the potential to earn a $25,000 bonus if company sales exceeded $7 million for 2002. In addition, McCarthy received four weeks of paid vacation per year, a car allowance of approximately $500 monthly, access to company benefit plans and the right to reimbursement of reasonable expenses incurred while conducting the company's business. The agreement also specified that McCarthy could terminate her employment at any time for contractually defined "good reason," including reduction in her compensation. Upon termination for "good reason", McCarthy had a contractual right to the balance of her annual compensation as well as unpaid expenses. However, the agreement also contained a restrictive covenant, effective for two years after termination of the employment agreement, which specified that McCarthy would forfeit all incentive and other specified compensation owing or previously paid if she breached the covenant.

The parties apparently fulfilled their contractual obligations without incident until May 15, 2003, when McCarthy was supposed to receive her bonus under the employment agreement. She claims that, although company sales exceeded $7 million in 2002, she did not receive her bonus. Later that summer, the head of Milestone requested that McCarthy take a leave of absence from her job, with an

understanding that she would not be compensated while she was on leave. McCarthy agreed, but claims that she was still required to perform company business during her leave without salary or compensation for her expenses. In September of 2003, McCarthy gave written notice to the company that she was terminating her employment, claiming that the company unilaterally reduced her compensation and thereby provided her with contractual "good reason" to resign.

McCarthy claims that Milestone has failed to pay her 2002 bonus or the balance of her 2003 salary and has also failed to reimburse her company expenses. In addition, she claims that the company refused to pay for her accrued, but unused, vacation time and refused to return her personal property left on its premises. According to McCarthy, Milestone now wrongfully claims that it fired her for "cause" and that such termination gave the company a right to seek damages against her. By making this claim, McCarthy further contends, Czarnowski has breached its implied duty of good faith and fair dealing under the employment agreement.

On October 1, 2003, in the midst of the employment dispute, the final payment under the purchase agreement became due. Czarnowksi refused to make the final payment in a letter dated September 29. McCarthy responded to that refusal by letter on October 1 and then sent a written notice of default and demand for payment on October 17. While the exact facts are unclear from the complaint, it

appears from the October 1 letter either that Czarnowski paid some portion of the amount owed or that McCarthy recovered that portion from her security interest. In either case, McCarthy filed this lawsuit on October 22, 2003, seeking to recover the outstanding balances of the purchase and employment agreements as well as her unreturned personal property. McCarthy also seeks a declaratory judgment invalidating the restrictive covenant in the employment agreement, enforcing the security agreement, and declaring that McCarthy is not liable to Czarnowski for damages under the employment agreement. In addition, McCarthy claims that Czarnowski fraudulently induced her into accepting stock in Milestone, a non-existent corporation, as security for the purchase agreement. She claims that this deception left her with a security interest worth significantly less than the value she bargained for and seeks both compensatory and punitive damages.

## LEGAL STANDARD

In ruling on motions to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). On a

12(b)(1) motion to dismiss, the court "shall dismiss" if it determines that it "lacks jurisdiction of the subject matter." Fed. R. Civ. P. 12(h)(3). The allegations of a complaint should not be dismissed on a 12(b)(6) motion for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

I. Forum Selection Clause

Czarnowski argues that Counts V, VI, and VII should be dismissed because of

improper venue. McCarthy's employment contract contained the following provision:

> This agreement shall become effective upon its execution by both parties and it shall be construed and enforced in accordance with the internal laws of the State of Illinois with venue in the applicable circuit courts of Cook County, Illinois, irrespective of the fact that either of the parties now is or may become a resident of a different state. Both parties hereto waive any objection they may have to the jurisdiction or venue of such courts

Czarnowski claims that the clause at issue is a mandatory forum selection clause while McCarthy claims it is a permissive clause, merely designating one acceptable forum without foreclosing others. If the clause is mandatory, Czarnowski contends that this court should enforce the clause by dismissing Counts V, VI, and VII for improper venue.

Mandatory forum selection clauses are "*prima facie* valid" and courts will enforce them "unless the opposing party shows that enforcement would be unreasonable under the circumstances." *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23 (Ill. App. Ct. 1987). A 12(b)(3) motion is the proper manner for a litigant to challenge venue based upon a forum selection clause, and Czarnowski has filed a 12(b)(3) motion in this case. *E.g. Contl. Ins. Co. v. M/V Orsula*, 354 F.3d 603, 606-07 (7th Cir. 2003). Where a clause specifies venue with "mandatory or obligatory language," the clause is a mandatory forum selection clause, limiting litigation to the

designated venue. *Paper Express Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). If the clause refers instead to "jurisdiction," it is generally not mandatory unless some further language expresses the parties' intent to make venue exclusive. *Id.*

In the instant action, the forum selection clause provision in McCarthy's employment contract refers to venue specifically, rather than mere jurisdiction, stating that the agreement will be enforced "with venue in the applicable circuit courts of Cook County, Illinois." The provision also uses the phrase "shall be construed and enforced" in describing the selected venue, which is obligatory language. *See Calanca*, 510 N.E.2d at 22-23 (noting that courts interpret "shall" as mandatory language in a forum selection clause). While that language more clearly refers to the Illinois choice of law provision than to the venue provision, there is no other verb phrase between the two provisions. As such, the same obligatory language attaches to both provisions, rendering venue mandatory in Cook County circuit courts.

In support of her contention that the clause is permissive, McCarthy cites two Northern District cases, but both are distinguishable. First, McCarthy refers to *Midwest Media Adver., Inc. v. Heritage Mktg., Inc.*, 1992 WL 121522 (N.D. Ill. 1992). However, the language at issue in that case only referred to "jurisdiction."

*Id.* at *1. Similarly, in *Saxena v. Virtualabs, Inc.*, 2002 WL 992636 at *1 (N.D. Ill. 2002), the mandatory language refers only to "jurisdiction," while venue appears in a distinct waiver clause. Because the Seventh Circuit has held that use of the word "jurisdiction" generally creates a permissive clause, while use of the word "venue" in conjunction with mandatory or obligatory language creates a mandatory forum selection clause, neither of these cases accurately captures the clause at issue in this case. *Paper Express Ltd.*, 972 F.2d at 757.

Having found the clause mandatory, we turn next to the question of enforcement. If a forum selection clause is included in an agreement the clause is "*prima facie* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances." *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23 (Ill. App. Ct. 1987). In determining whether a forum selection clause is unreasonable a court should consider: "(1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance; (4) the location of the parties and witnesses participating in the litigation; (5) the inconvenience of the parties of any particular location; and (6) whether the clause was equally bargained for." *Id.*; *Roberts & Schaefer Co. v. Merit Contracting, Inc*, 99 F.3d 248, 252 (7th Cir. 1996)(citing *Calanca*). The court should also consider whether the opposing party

has shown "that enforcement would contravene the strong public policy of the state in which the case is brought." *Yamada Corp. v. Yasuda Fire and Marine Ins. Co., Ltd.*, 712 N.E.2d 926,930-34 (Ill. App. Ct. 1999). In considering the potential inconvenience to the parties caused by the forum selection clause the court should inquire as to whether "the chosen forum would be so seriously inconvenient for trial that the opposing party would be deprived of his or her day in court" and whether or not "both parties freely entered into the agreement contemplating such inconvenience should there be a dispute." *Id.*

McCarthy does not attempt to show that enforcement would be unreasonable in this case. McCarthy has already chosen to file her complaint in a federal court geographically seated in the specified forum in the employment contract provision which is also an indication that proceeding in the Circuit of Cook County courts would not be overly burdensome. The language of the clause provides that the employment contract in which it appears must be "construed and enforced" by Cook County courts. Accordingly, we dismiss Counts V, VI, and VII based upon improper venue.

II. Particularity of Fraud Claim

Czarnowski argues that McCarthy failed to plead her fraud claim in Count IV

of her complaint with adequate specificity as is required under Federal Rule of Civil Procedure 9(b). Under Rule 9(b), a plaintiff raising a fraud claim must plead certain particulars of that claim, including the identity of those who made the misrepresentation as well as the time, place and substance of the misrepresentation. *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923-24 (7th Cir. 1992). If the complaint relies upon allegations made on information and belief, it must include the grounds for those suspicions. *Id.* at 684.

McCarthy alleges in her complaint that as part of the purchase agreement, Czarnowski pledged stock in Milestone Group, Inc., and created the false impression that Milestone was an Illinois Corporation by making representations to McCarthy and by producing an apparently false stock certificate identifying Milestone as a separate corporations. McCarthy contends that she was tricked by Czarnowski into believing that the stock had sufficient value to provide security for the purchase agreement and alleges that she has not been able to recover the amount due to her in part because of the lack of value of the security. McCarthy also attached to her complaint documents, many of which are dated, bear the signatures of Czarnowski employees, including its vice president, and refer to Milestone, in various phrases, as a separately incorporated subsidiary of Czarnowski. For example, the Asset Purchase Agreement, dated September 29, 2000 and signed by Czarnowski's vice

president, Scott Levitt, identifies Milestone as an Illinois corporation. (Ex. A, Tab 3). It further states that the parties would close on their agreement on September 30, 2000 at 11:59 am in Czarnowski's Atlanta, GA office, at which time they would exchange several of the other documents included as exhibits. These other documents include the Pledge Agreement, which has as its attachment the allegedly fraudulent stock certificate for 1,000 shares of Milestone stock, signed by Scott Levitt and dated September 22, 2000. (Ex. A, Tab 8). While McCarthy alleges merely "on information and belief" that Czarnowski never separately incorporated Milestone, we think that it is fair to infer from later paragraphs that her suspicion derives from the diminished value of her security interest in Milestone. (Compl. 10, 47, 48). Therefore, we deny the motion to dismiss Count IV.

III. Amount in Controversy

Czarnowski moves to dismiss this action for failing to meet the amount in controversy requirement. One condition that must be met before a district courthas subject matter jurisdiction over a civil action is that the matter in controversy must "exceed[] the sum or value of $75,000." 28 U.S.C. § 1332(a). We cannot make a proper determination on the amount in controversy issue due to the inadequate briefing on this issue by both sides in this action. McCarthy has touched in her

briefs on many potential bases for recovery but has failed to address the alleged bases with the specificity needed for this court to make an informed decision on this issue. For instance, McCarthy has brought a conversion claim and alleges in her complaint that Czarnowski refuses to return to her personal items including "three large bronze candlesticks and various leather skins." (Compl. 63.). However, in McCarthy's answer brief to the instant motion she fails to offer even an estimated value of the candlesticks and leather skins and fails to explain if those items are the entire list of personal items that Czarnowski refuses to return that are referred to in the complaint. Czarnowski has also failed to adequately address the amount in controversy issue. Despite the many bases for recovery asserted by McCarthy, Czarnowski devotes a half page in its motion to dismiss to the amount in controversy argument. Czarnowski specifically touches only on the asserted basis for recovery for the breach of the purchase agreement and an asserted basis for recovery under the employment agreement. Czarnowski makes only a general reference to the other asserted bases for recovery by McCarthy and states in a conclusory fashion that the amount in controversy requirement is not met in this action. Therefore, we deny the motion to dismiss all remaining claims for lack of subject mater jurisdiction without prejudice.

## CONCLUSION

Based on the foregoing analysis, we grant the motion to dismiss Counts V, VI, and VII for improper venue. We deny the motion to dismiss Count IV. We deny the motion to dismiss the remaining claims without prejudice. Czarnowski must file a new motion to dismiss for lack of subject matter jurisdiction by 8/26/04. The answer will be due 9/9/04. The reply will be Due 9/16/04.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 12, 2004